# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41565

United States Court of Appeals
Fifth Circuit

**FILED**

January 3, 2018

Lyle W. Cayce
Clerk

LEILA HERNANDEZ,

      Plaintiff – Appellant

v.

GUY BAILEY; HAVIDAN RODRIGUEZ; DAHLIA GUERRA; THE UNIVERSITY OF TEXAS – PAN AMERICAN; THE UNIVERSITY OF TEXAS SYSTEM; THE UNIVERSITY OF TEXAS RIO GRANDE VALLEY,

      Defendants – Appellees.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:15-CV-410

Before DAVIS, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

In the latest wrongful termination dispute arising out of the legislative abolition of the University of Texas–Pan American ("UTPA") and the University of Texas at Brownsville ("UTB"), Leila Hernandez ("Hernandez") appeals the district court's order denying her motion for leave to file an amended complaint and granting Defendant-Appellees' Federal Rule of Civil

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41565

Procedure 12(c) motion for judgment on the pleadings. Because Hernandez, in both her original and proposed amended complaints, failed to state a plausible claim for relief, we AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

As this Court has already recited many of the relevant facts in an earlier opinion,[1] the following summary of the case is slightly abridged. In 2003, UTPA hired Hernandez as a graphic design Associate Professor. Hernandez served in that role until September of 2008 when she was awarded tenure and promoted to Assistant Professor. As a tenured faculty member, Hernandez was entitled to continuing employment at UTPA "until retirement or resignation unless terminated because of abandonment of academic programs or positions, financial exigency, or good cause."[2]

In early 2013, the Texas legislature passed Senate Bill 24, which abolished UTPA and UTB and created a consolidated university in southern Texas later named the University of Texas Rio Grande Valley ("UTRGV").[3] Senate Bill 24 guaranteed that all students "admitted to or enrolled at" UTPA or UTB on the date of abolition were "entitled to admission" at UTRGV, but it merely instructed the University of Texas System Board of Regents ("Board") to "facilitate the employment at [UTRGV] of as many faculty and staff of the abolished universities *as is prudent and practical*."[4] Other than this mandate, the bill left the hiring procedures at UTRGV up to the Board's expertise and discretion.

In fulfilling its responsibilities, the Board developed a bifurcated hiring process. Details of the process were disseminated by a document entitled,

---

[1] *See Edionwe v. Bailey*, 860 F.3d 287, 290–91 (5th Cir. 2017).

[2] *Id.* at 290.

[3] Act of May 22, 2013, 83d Leg., R.S., ch. 726, 2013 Tex. Gen. Laws 1846.

[4] *Id.* (emphasis added).

2

No. 16-41565

"Hiring of Tenured and Tenure-Track Faculty Members to The University of Texas Rio Grande Valley Frequently Asked Questions" ("FAQ"). Phase I was limited to tenured and tenured-track faculty members from UTPA and UTB who met criteria delineated by the Board's official hiring policy. According to the policy, if, in addition to satisfying seven other requirements, a tenured UTB or UTPA faculty member had not received "a disciplinary action" from UTB or UTPA in the last seven years, UTRGV's President was required to "*recommend* that the Board of Regents grant tenure [at UTRGV] to" that individual in Phase I. If a UTPA and UTB faculty member was not hired in Phase I, she could then apply in Phase II alongside members of the general public.

Hernandez applied for Phase I hiring on September 4, 2014. Guy Bailey, UTRGV's President, rejected her application via e-mail on October 6, 2014. In the e-mail, Bailey explained that Hernandez was ineligible for Phase I hiring because she had been disciplined by UTPA in 2011. Hernandez, Bailey, and multiple UTPA administrators subsequently exchanged several e-mails regarding the 2011 disciplinary action, but UTRGV ultimately upheld its rejection of Hernandez's Phase I application. Hernandez then applied in Phase II. On May 18, 2015, UTRGV rejected her Phase II application, specifically noting that her position was "closed" and would "remain[] unfilled."[5] Hernandez's employment and tenure at UTPA officially terminated on August 31, 2015. The next day, UTRGV commenced operations.

On August 28, 2015, Hernandez sued Guy Bailey, Havidan Rodriguez, Dahlia Guerra, UTPA, the UT System, and UTRGV (collectively, "Appellees") in Texas state court pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations

---

[5] The hiring policy required that a Phase I applicant's desired academic program "exist at the inception of 'UTRGV'" and that UTRGV's budget allow for the hiring of the particular position.

of procedural and substantive due process.  She also sought a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.  Appellees timely removed the suit to federal court under 28 U.S.C. § 1331 and filed a Rule 12(c) motion for judgment on the pleadings.  Hernandez filed a response, or in the alternative, a motion for leave to amend pleadings.  Hernandez then filed an amended motion for leave to amend her complaint and attached a copy of her proposed amendments.  In the proposed amendments, Hernandez included a variety of additional factual allegations as well as two new constitutional claims:  an equal protection claim and a void-for-vagueness claim.  The district court denied Hernandez's amended motion for leave, finding that her amendments would have been futile.  The district court simultaneously granted Appellees' Rule 12(c) motion, holding that Hernandez failed to state a plausible claim for relief on procedural and substantive due process grounds and that Hernandez was not entitled to declaratory judgment because the state entity defendants enjoyed sovereign immunity.  This appeal ensued.

## II.    DISCUSSION

### A. Motion for Judgment on the Pleadings

#### 1.    Standard of Review

This Court reviews de novo the district court's grant of a Rule 12(c) motion for judgment on the pleadings.[6]  The standard we apply is the same standard we apply in reviewing dismissals under Rule 12(b)(6) for failure to state a claim.[7]  "[The] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[8]

---

[6] *See Edionwe*, 860 F.3d at 291.

[7] *See id.*

[8] *Id.* at 291 (internal quotation marks and citation omitted).

No. 16-41565

## 2.    Analysis

Our recent decision in *Edionwe* forecloses many of the issues presented by Hernandez's appeal of the district court's Rule 12(c) dismissal.  In that case, the plaintiff (Edionwe) was a tenured faculty member at UTPA.[9]  Although he missed the deadline for applying for a position at UTRGV during Phase I hiring, he submitted a timely application during Phase II.[10]  However, Edionwe was subsequently informed that the position he applied for would not be filled, and his employment and tenure at UTPA terminated on August 31, 2015.[11]

Edionwe then filed suit under §§ 1983 and 1988 against the same defendants Hernandez sued herein.[12]  He asserted that the defendants violated his constitutional rights to procedural and substantive due process by terminating his property interest in continuing employment.[13]  We determined, however, that Edionwe "had no constitutionally protected interest in employment or tenure at UTRGV or the UT System at large."[14]  We further determined that Edionwe was afforded procedural and substantive due process with respect to the termination of his employment at UTPA.[15]

Hernandez similarly asserts that she had a constitutionally protected property interest in continuing employment at UTRGV.  Like Edionwe, she contends that the following sources gave rise to a reasonable expectation of continued employment at UTRGV: (1) her length of service and tenure at

---

[9] *See Edionwe*, 860 F.3d at 290.

[10] *See id.*

[11] *See id.* at 290-91.

[12] *See id.* at 291.  There is one additional defendant present in this matter, Dahlia Guerra.

[13] *See id.* at 292.

[14] *Id.* at 293 (footnote omitted).

[15] *See id.* at 293-94.

UTPA, (2) the legislation[16] requiring employment of as many faculty from UTPA and UTB "as is prudent and practical," (3) the public statement by UTRGV's President that UTPA and UTB were merging, (4) the hiring policy adopted by the UT System for UTRGV tenured faculty members of UTPA, and (5) the UTRGV FAQ Statement on Hiring tenured UTPA faculty members. We addressed these same factors in *Edionwe* and determined that none of them created a constitutionally protected interest in employment or tenure at UTRGV or the UT System at large.[17]  Consequently, Hernandez's arguments on these issues are foreclosed.  Hernandez's arguments that she was not afforded procedural or substantive due process with respect to the termination of her employment at UTPA are also foreclosed by *Edionwe*.[18]

The only argument we did not specifically address which Hernandez raises is whether the fact that UTRGV tenured and tenure-track faculty were given credit for years of service at UTPA created a constitutionally protected property interest.[19]  Such action, however, still does not establish that "UTRGV *itself*, through the board of regents, adopted a policy that guaranteed employment for all faculty from UTPA."[20]  Therefore, Hernandez's argument on this issue is unavailing.

Because Hernandez had no constitutionally protected interest in employment at UTRGV or the UT system at large, and she was afforded procedural and substantive due process with respect to the termination of her

---

[16]  2013 Tex. Sess. Law Serv. 1853 (West).

[17] *See Edionwe*, 860 F.3d at 292-93, 295-96.

[18] *See id.* at 293-94.

[19] *See id.* at 293 n.1 (declining to address certain allegations and external documents because they were not included in Edionwe's complaint or incorporated by reference).

[20] *See id.* at 293.

No. 16-41565

employment at UTPA, the district court did not err in granting the Appellee's Rule 12(c) motion for judgment on the pleadings.[21]

## B. Motion for Leave to Amend

### 1.   Standard of Review

Motions to amend made before trial are governed by Federal Rule of Federal Procedure 15(a)(2), which instructs district courts to grant leave to amend "freely . . . when justice so requires."[22]  "[I]n order to take advantage of the liberal amendment rules . . . , the party requesting amendment, even absent a formal motion, need only 'set forth with particularity the grounds for the amendment and the relief sought.'"[23]  Because Rule 15(a) "evinces a bias in favor of granting leave to amend," the district court must have a "substantial reason" for denying the motion.[24]  District courts are empowered to deny a motion to amend for, inter alia, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of [the] amendment."[25]  We have interpreted futility "to mean that the amended complaint would fail to state a claim upon which relief could be granted."[26]

---

[21] Because we conclude that Hernandez failed to allege a constitutional violation, we need not address whether any defendant was entitled to qualified immunity.  Furthermore, we exercise our discretion and decline to consider Hernandez's claim for declaratory judgment.  *See Edionwe*, 860 F.3d at 294 n.2.

[22] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting FED. R. CIV. P. 15(a)(2)).

[23] *Id.* (quoting *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003)).

[24] *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (internal citations and quotation marks omitted).

[25] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[26] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

We generally review the denial of a motion to amend for abuse of discretion;[27] however, where the district court bases its denial of leave to amend solely on futility grounds, a de novo review applies.[28]  This review is "identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)."[29]  Under the 12(b)(6)  standard, well-pleaded facts are viewed in the light most favorable to the plaintiff.[30]  However, the plaintiff must still offer specific facts, not mere conclusory statements.[31]  The claims advanced must be plausible.[32]

Even though the district court failed to address, specifically, how Hernandez's additional proposed claims—an equal-protection claim and a void-for-vagueness claim—would have been futile if amendment were permitted, we may affirm the district court's dismissal "on any grounds supported by the record."[33]  First, we turn to Hernandez's proposed equal-protection claim.

## 2.   Equal-Protection Claim

Hernandez argues that the district court erred by denying her the opportunity to amend her complaint to include an equal-protection claim.  An equal-protection claim is not futile, she contends, because she alleged in her proposed amended complaint that UTRGV's failure to hire her resulted from a "class-based decision treating distinct groups of individuals categorically different."  She submits that distinguishing between these classes of former

---

[27] *Thomas*, 832 F.3d at 590 (citing *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008)).

[28] *See id.*

[29] *See City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

[30] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[31] *Stripling*, 234 F.3d at 873.

[32] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

[33] *See City of Clinton*, 632 F.3d at 153 (quoting *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006)).

No. 16-41565

UTPA professors on the basis that some, but not others, were disciplined within the last seven years, is not rationally related to the State's interest in promoting quality public education.

Appellees counter that Hernandez's proposed amended complaint failed to adequately plead an equal-protection claim because: (1) discretionary hiring decisions in the public-employment context do not yield a "clear standard" by which to evaluate an equal-protection claim; and (2) Hernandez has not carried her burden of negating all rational bases for the decision not to hire those professors who were disciplined within seven years of the decision.

We need not address the arguments concerning Hernandez's ability to bring this claim in the public-employment context because UTRGV's decision to hire only those professors who have not been disciplined within the last seven years is patently rationally related to a legitimate public interest.

The fundamental directive of the Equal Protection Clause is that similarly-situated persons should be treated alike by government actors.[34] However, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions," the classification need only bear a rational relationship to a legitimate state interest to survive judicial scrutiny.[35] Courts are bound to uphold differential treatment if any "reasonably conceivable state of facts" gives rise to a rational basis for the classification.[36]

---

[34] *See Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.32d 921, 932 (5th Cir. 1988).

[35] *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *see also Apache Bend Apts., Ltd. v. United States*, 964 F.2d 1556, 1560–61 (5th Cir. 1992) ("[C]lassifications of any sort that are not rationally related to a legitimate governmental interest are unconstitutional. Equal protection is not concerned exclusively with archaic stigmas.").

[36] *Hines v. Alldredge*, 783 F.3d 197, 202–03 (5th Cir. 2015) (quoting *Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

No. 16-41565

Because the classification at issue here does not infringe upon fundamental constitutional rights, we apply rational basis review.[37] Here, the requirement that professors not have any disciplinary record within seven years of application is, at a minimum, rational. It is reasonable to conclude that professors' overall fit with UTRGV would be better, and thus the quality of the teaching higher, if professors eligible for employment at UTRGV were limited to those without a recent history of disciplinary actions.[38] Because an amendment to include such a claim would have been futile, we affirm the district court's denial of Hernandez's motion to amend her complaint on equal protection grounds.[39]

### 3.    Void-for-Vagueness Claim

Hernandez also argues that the district court erred in failing to grant her leave to amend her complaint to add a void-for-vagueness claim challenging Senate Bill 24. She argues that such a claim is not futile because persons of common intelligence must necessarily "guess at" the meaning of the phrases "as many" and "prudent and practical" in the subsection of the bill providing that "the board of regents shall facilitate the employment at [UTRGV] . . . of as many faculty and staff of the abolished universities as is prudent and practical." Consequently, she argues, Senate Bill 24 is unconstitutionally vague both on its face and as-applied to Hernandez.

Appellees counter that an amendment to include Hernandez's void-for-vagueness claim in her complaint would have been futile because: (1)

---

[37] *See City of New Orleans*, 427 U.S. at 303.

[38] Though Hernandez vigorously disputes the existence of a disciplinary action against her at all in making her substantive and procedural due process claims, for the limited purpose of her equal-protection argument, she accepts—as she must—that she belongs to that purported class of professors who had been disciplined within the seven years before the UTRGV hiring decisions were made.

[39] *See City of Clinton*, 632 F.3d at 153.

intragovernmental mandates like that at issue in Senate Bill 24 are not susceptible to vagueness challenges; and (2) the portions of Senate Bill 24 that she challenges do not regulate private behavior and therefore are not amenable to a void-for-vagueness challenge.

In the public employment context, the government has "significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large."[40]    Indeed, the government, as employer, is endowed with much the same "broad discretion that typically characterizes the employer-employee relationship" in other contexts.[41]

Here, Senate Bill 24 effectively delegated to the Board the power to choose, "prudent[ly] and practical[ly]," the UTB and UTPA professors to hire at UTRGV.[42]    Because Hernandez's property interest in her tenured position at UTPA was extinguished by way of legislation, the State then had "broad discretion" in deciding whether to hire her anew as a professor at UTRGV.[43]

Though the context differs substantially from that at issue here, we find instructive the Supreme Court's recent decision in *Beckles v. United States*.[44] There, a defendant challenged the career criminal enhancement recommended in the Sentencing Guidelines as unconstitutionally vague.[45]  The Court found that the Guidelines were not subject to a vagueness challenge because the Guidelines "d[id] not fix the permissible range of sentences" available to a

---

[40] *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 599 (2008).

[41] *See id.* at 605.

[42] Act of May 22, 2013, 83d Leg., R.S., ch. 726, 2013 Tex. Gen. Laws 1846.

[43] *See id.*  See *supra* for an analysis of Hernandez's property interest.

[44] 137 S. Ct. 886 (2017).

[45] *See id.* at 890.

district court, which has "unfettered" discretion, but "merely guide[d] the exercise of a court's discretion in choosing an appropriate sentence."[46]

Here, the State, as an employer, had inherently broad discretion to make its own hiring decisions.[47] Senate Bill 24 merely provided the Board light guidance in exercising that discretion.[48] Indeed, it is difficult to see how legislative guidance regarding how the Board should undertake its responsibilities could be vague without undermining the intragovernmental relationships that facilitate the exercise of state governmental power. Because amending Hernandez's complaint to allege either a facial or as-applied vagueness challenge would thus be futile, we affirm the district court on this issue as well.

## III.    CONCLUSION

For these reasons, we agree that Hernandez failed to state a plausible claim for relief and therefore AFFIRM.

---

[46] *Id.* at 892.

[47] We do not and need not find here that the discretion accorded a State in its hiring decision-making is so broad as to be "unfettered," but the State's discretion is broad enough that the kind of guidance mandated by the statute is constitutional.

[48] *Accord. Beckles*, 137 S. Ct. at 894–95.