# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2022

Lyle W. Cayce
Clerk

No. 21-10137

Shahram Afshani,

*Plaintiff—Appellant*,

*versus*

Spirit SPE Portfolio 2006-1, L.L.C.; SMTA Shopko
Portfolio I, L.L.C.; Spirit Realty Capital,
Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1421

Before Dennis, Elrod, and Duncan, *Circuit Judges*.

Per Curiam:*

After buying two large commercial properties, Shahram Afshani sued the sellers for breach of contract and fraud. He claimed that, during contract negotiations, the sellers had promoted the financial health of the properties'

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10137

big-box-store tenant, all the while knowing the tenant was in poor shape. The district court dismissed both claims, concluding Afshani pled no plausible breach and failed to allege fraud with the particularity demanded by Federal Rule of Civil Procedure 9(b). As to the contract claim, we agree with the district court and affirm. But as to the fraud claims, we disagree. On his third try, Afshani pled enough to clear the Rule 9(b) hurdle. So we reverse the dismissal of those claims and remand for further proceedings.

## I.

Spirit Realty Capital, Inc. ("SRC") owns two companies that held title to two commercial properties. One property is in La Crosse, Wisconsin (the "La Crosse Property"), and was owned by Spirit SPE Portfolio 2006-1, LLC ("SPE"). The other is in Onalaska, Wisconsin (the "Onalaska Property"), and was owned by SMTA Shopko Portfolio I, LLC ("SMTA"). Both properties are leased to big-box retailer Shopko under a master lease with SRC.

Afshani, an investor, won at auction the right to purchase the La Crosse Property from SPE. SRC senior vice president Travis Carter spearheaded the follow-on negotiations with Afshani to close the deal. Carter was also the managing agent of SPE and SMTA. Afshani alleges[1] that during the escrow period between June and July of 2018, Carter represented that Shopko was a financially viable tenant that could be relied on to pay its rent. Moreover, between June and December of 2018, Carter told Afshani on multiple occasions that "Shopko was a very valuable tenant that was vertically integrated and whose lease income could be counted on for years into the future . . . for the full term of the leases." Carter also represented

---

[1] The allegations are from Afshani's third amended complaint, which we accept as true. *Turner v. Lieutenant Driver*, 848 F.3d 678, 684 (5th Cir. 2017).

that "Shopko's pharmacy division was doing extremely well and its optical division was doing a 'phenomenal' volume of business." Motivated by Shopko's tenancy, Afshani closed on the La Crosse Property and, weeks later, agreed to purchase the Onalaska Property from SMTA.

At both closings, SPE and SMTA transferred the existing Shopko leases and delivered renewed Shopko leases expiring in 2031 and 2035, respectively, as the agreements required. Both agreements included "as is" provisions disclaiming any express or implied representation or warranty beyond the agreements. The agreements also precluded Afshani from contacting Shopko, its employees, or its representatives before closing without the seller's written consent.

Afshani (on behalf of an LLC) also agreed to buy a third property from SRC. During that escrow period, Carter sent Afshani a release, which Afshani declined to sign. The release purported to (1) disclaim that SRC had represented anything about Shopko's status, (2) disclaim any reliance on SRC's representations about Shopko, and (3) warrant that both parties acted solely on their own judgment and due diligence. When Afshani rejected the Release, SRC canceled the purchase contract and returned Afshani's deposit in full.

In May 2019, Afshani sued SRC, SPE, and SMTA (collectively, "Defendants") in Texas state court for fraud and breach of contract. According to Afshani, he would not have bought the LaCrosse and Onalaska Properties had he known about Shopko's "impending financial collapse." And because SRC had loaned $35 million to Shopko and was privy to Shopko's "severe financial distress," Afshani claimed SRC fraudulently concealed Shopko's deteriorating financial position and "dumped" the properties by selling them to him.

No. 21-10137

Defendants removed the case to federal court and moved to dismiss for failure to state a claim. Afshani amended his complaint in response. Defendants again moved to dismiss. Granting the motion, the district court dismissed all claims without prejudice to allow Afshani to replead with sufficient particularity, stating that "the Court's allowance of one more repleading will be [Afshani's] last."

Afshani again amended his complaint and, for the first time, identified Carter as the perpetrator of the alleged fraud. Defendants again moved to dismiss. This time, the court dismissed Afshani's claims with prejudice. As to the contract claim, it held that (1) Afshani failed to identify any part of either contract breached by Defendants, and (2) Afshani's unilateral mistake theory failed as a matter of law. As to the fraud claims, the court concluded Afshani's complaint failed to sufficiently plead (1) the time and place of the alleged fraud, and (2) that Defendants knew of Shopko's financial condition. Afshani timely appealed.

## II.

We review *de novo* a Rule 12(b)(6) dismissal for failure to state a claim. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is proper when, accepting all well-pled facts as true, the plaintiff has not stated a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," whereas "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

4

### III.

### A.

We first address Afshani's breach of contract claim, which the district court correctly dismissed. Afshani argues that he "pled a valid contractual theory" of unilateral mistake of fact. He argues that because Shopko's financial condition was material to the contract and Afshani mistakenly relied on an incomplete picture of that condition when buying the properties, a mistake exists that voids the contract. But the contracts themselves did not explicitly require Defendants to disclose this information, and, in any event, such allegations are better understood as part of his fraud claims, which we address *infra*. Moreover, Afshani himself admits that "unilateral mistake" is really a theory for equitably avoiding a contract, not a theory of breach. *See James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960).

Afshani has thus failed to identify any specific provision of the agreements that the Defendants allegedly breached. He does point to Section 2.02(c), which required SPE and SMTA to deliver "a form of new lease . . . to be executed by [Shopko] in the form previously approved." But, as Afshani admits, the Defendants did what that section required. His breach of contract theory therefore fails. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation omitted) ("A breach occurs when a party fails to perform a duty required by the contract.").

### B.

We turn to Afshani's fraud claims. Under the heightened pleading standard of Rule 9(b), a plaintiff "must state with particularity the circumstances" of the allegedly fraudulent conduct—at minimum "the who, what, when, and where." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th

Cir. 2010). "What constitutes particularity will necessarily differ with the facts of each case." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up). The district court gave Afshani two additional chances to allege fraud with sufficient particularity before dismissing the claims with prejudice. Contrary to the court's ruling, however, we think Afshani managed to clear the Rule 9(b) hurdle on his third try.

First, Afshani alleged the "who" of his fraud claims. In his third amended complaint, he identified Carter as the person who allegedly made multiple misleading statements about Shopko's financial viability. Second, as for the "what," Afshani alleged Defendants knew about Shopko's unfavorable financials because they themselves had made sizeable loans to Shopko. Moreover, according to Afshani, Defendants concealed this information from him and instead promoted Shopko as a solid lessee. Despite Shopko's proximity to bankruptcy, Afshani alleges that Carter stated Shopko was "a very valuable tenant that was vertically integrated and whose lease income could be counted on for years into the future . . . for the full term of the leases." That's enough to meet the Rule 9(b) requirements for the "what" prong. *See Benchmark Elecs.*, 343 F.3d at 724 (finding Rule 9(b) satisfied by allegations that defendant's representative made false and misleading representations about a purchased stock's financial health).[2]

---

[2] For similar reasons, we also disagree with the district court's conclusion that Afshani failed to allege plausibly that Carter knew the falsity of his statements or recklessly disregarded the truth. Afshani claimed Carter had "inside information" about Shopko's financial health due to SRC's $35-million loan to the big-box retailer. And Afshani repeatedly alleged Carter's knowledge of Shopko's financial distress, claiming he "traded with [Afshani] based on non-public information about which only Defendants knew and about which Defendants knew [Afshani] was ignorant." Afshani thus adequately pled Carter knew his representations were false to clear the hurdles of Rule 9(b) and 12(b)(6).

No. 21-10137

The district court also concluded Afshani failed to adequately allege the "when" of his fraud claims. Specifically, the court found that Afshani's allegation that Carter made the statements "between June and December of 2018" was not specific enough. But Afshani's complaint explains that some statements were made during the escrow period for the properties in question. And because Afshani proceeded on a fraud-by-nondisclosure theory, he identified a shorter time window—between June and July 2018—during which Carter likely should have disclosed Shopko's precarious condition.[3] Afshani also alleged that during this period, Carter "represented that Shopko was a valued and financially viable tenant that could be counted upon to faithfully pay the new lease." These allegations are particular enough to satisfy Rule 9(b). *See Benchmark Elecs.*, 343 F.3d at 724 (finding Rule 9(b) satisfied where plaintiff alleged oral misrepresentations occurring over a series of distinct months); *see also Southland Sec. Corp v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 372 (explaining that "Rule 9(b) does not require that a specific date and time always be alleged as to each misrepresentation").

Finally, the district court concluded that Afshani failed to allege "where" the fraud took place. It reasoned that any allegedly fraudulent statements "certainly were not made in the contracts, which do not contain clauses resembling any of the statements Carter made." We disagree. In his third amended complaint, Afshani claimed Defendants should have disclosed their knowledge of Shopko's financial condition in the real estate contracts and the new leases. He alleged: "As a result of Mr. Carter's representations . . . [Afshani] relied on the resulting income stream reflected in the New Lease . . . ." In particular, "the delivery of the New Lease by Defendants and

---

[3] What's more, Afshani specifically alleged that Carter "should have" disclosed Shopko's poor financial health "within the contracts . . . or clearly and plainly disclaimed any ability for [Afshani] to rely upon the New Leases."

Defendants' non-disclosure of Shopko's known (to Defendants only, but not to Plaintiff) impending financial collapse represented a material fraudulent misrepresentation." Afshani made substantially similar allegations about the Onalaska contract and leases. These allegations are enough to satisfy Rule 9(b).

In sum, contrary to the district court's ruling, we conclude that Afshani satisfied the heightened pleading standard of Rule 9(b).[4]

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

[4] On appeal, Defendants raised several arguments in the alternative as to why the district court's ruling should be upheld, apart from the Rule 9(b) issue. For instance, Defendants argued the economic-loss doctrine bars Afshani's suit. SRC also argued that none of the alleged misrepresentations is attributable to it. The district court did not address any of these issues in its ruling, and we think it appropriate to allow that court to do so in the first instance. We express no opinion as to how those issues should be resolved on remand.